# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

01 OCT 19 PM 3:05

...STRICT COURT
...D. OF ALABAMA

| | |
|---|---|
| REIFEN-ENTSFORGUNGSGESELL-SCHAFT MBH, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-00-N-2977-S |
| OXY TIRE, INC., | ] |
| Defendant(s). | ] |

ENTERED
OCT 19 2001

**Memorandum of Opinion**

## I. Introduction

The court has for consideration plaintiff's Motion for Summary Judgment, filed August 8, 2001, and plaintiff's motions to Reconsider and Dismiss, filed October 9, 2001. (Doc. # 36, 42, 55-56). The issues have been briefed by both parties and are now ripe for decision. Upon due consideration, the motions will be **GRANTED in part and DENIED in part**.

## II. Background

### A. Undisputed Facts

Reifen-entsforgungsgesell-schaft mbH ("REG mbH") is a German corporation with its principal place of business in Hannover. Oxy Tire, Inc. ("Oxy Tire") is an Alabama corporation with its principal place of business in Montevallo, Alabama. (Doc. # 1). In August of 1995, the parties entered into a contract whereby REG mbH agreed to sell and Oxy Tire agreed to purchase for refurbishing and resale automobile tires of a type specified by the agreement. Oxy Tire agreed that it would limit the markets in which it would resell the tires purchased from REG mbH. (Doc. # 22, Ex. A). When the contract was executed,



and while REG mbH was performing its obligations under the contract, REG mbH was not qualified to do business in Alabama. *See* Ala. Code § 10-2B-15.01; (Doc. # 14).[1]

Between January 1, 1998 and April 23, 1999, REG mbH shipped and Oxy Tire received approximately 33,327 of the tires specified in the contract. (Doc. # 1; 20). On May 28, 1999, REG mbH terminated its agreement with Oxy Tire. (Doc. # 22, Ex. D). To justify its action in terminating the contract, REG mbH asserted that Oxy Tire had failed to pay invoices and that it had received evidence that Oxy Tire had resold some of the purchased tires in markets that were expressly prohibited by the parties' agreement. *Id.*

### B. Disputed Facts

REG mbH maintains that Oxy Tire has breached the parties' agreement by failing or refusing to pay approximately $1,139,769.00 in unpaid invoices and by selling tires in prohibited countries. (Doc. # 1).[2] REG mbH also avers that at all times it supplied tires as contemplated by the parties, and that Oxy Tire accepted such tires without objection. (*Id.*; *see also* Doc. # 49). The corporation seeks relief under four separate theories: breach of contract, account stated, open account, and goods sold and delivered. In answer to these claims, Oxy Tire disputes its financial obligation to REG mbH, and claims as defenses breach of the contract by REG mbH, and impossibility of performance. (Doc. # 20; *see also*

---

[1] On November 15, 2000, Oxy Tire moved against REG mbH on the ground that, as a foreign corporation not qualified to do business in the state of Alabama, REG mbH was precluded from enforcing the contract between the parties in Alabama courts. (Doc. #6). The court denied Oxy Tire's motion on February 5, 2001. (Doc. # 18, 19).

[2] The deposition of Oxy Tire's officer of manufacturers relations contains evidence that this provision of the contract was subsequently modified by oral agreement between the parties. (*See* Doc. # 38, Dep. of Eric Habshey, pp. 85-87).

2

Doc. # 39, Dep. of Terry Habshey, pp. 62).[3] Specifically, Oxy Tire maintains that REG mbH shipped tires of a quality not in conformity with the contract. (Doc. # 20; Doc. # 46). It also alleges that at least one person associated with REG mbH possessed knowledge that Oxy Tire was in receipt of tires not in conformity with the contract. (Doc. # 38, Dep. of Eric Habshey, pp. 65-66; 76-78; Doc. # 39, Dep. of Terry Habshey, pp. 51-52).

### III.  Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in

---

[3] Oxy Tire also counterclaimed against REG mbH, averring breach of contract, fraud, and suppression. The court dismissed these claims on September 7, 2001. (Doc. # 48). The court found the breach of contract claim due to be dismissed with prejudice on account of Oxy Tire's failure to give notice of breach to REG mbH. (*Id*. at 5-7). The court found the remaining claims due to be dismissed on account of Oxy Tire's failure to plead in accordance with Federal Rule of Civil Procedure 9(b). (*Id*. at 7-10).

On September 26, 2001, Oxy Tire filed motions to Reconsider and for Leave to Amend Counterclaim. (Doc. # 50-51). The court granted these motions on September 27, 2001, thereby reinstating Oxy Tire's breach of contract claim and its amended fraud and suppression claims. (Doc. # 52-54). Plaintiff's Motion to Reconsider seeks this court to vacate its order reinstating Oxy Tire's breach of contract claim. (Doc. # 55). Plaintiff's Motion to Dismiss seeks this court to finally dispose of defendant's fraud and suppression counterclaims. (Doc. # 56).

support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference

but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

### A. Breach of Contract

Summary judgment is proper on the breach of contract claim only if REG mbH has established sufficient undisputed facts on the following four elements: "(1) the existence of a valid contract binding the parties in the action, (2) [its] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 975 (Ala. 1998); *Southern Medical Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995); *see also Mann v. Bank of Tallassee*, 694 So. 2d 1375, 1380 (Ala. Civ. App. 1996). The court is satisfied that the first, third, and fourth elements of this test presently exist. No party to this action has disputed the validity of the contract, and the court sees nothing problematic or ambiguous within the language relevant to this motion. (*See* Doc. # 22, Ex. A). The evidence of outstanding invoices submitted by the plaintiff, and the defendant's failure to contest their validity or accuracy, establishes the potential for damages to plaintiff (presuming success on the remaining elements). (*See id.*, Ex. C). Finally, defendant is not heard to claim performance under the contract. Defendant's claim is essentially a plea of defense and excuse. (*See* Doc. # 20; Doc. # 39, Dep. of Terry Habshey, pp. 62).

The question pertinent to this summary judgment motion is whether the plaintiff has fulfilled its obligations. *See Southern Medical Health*, *supra*; *see also Winkleblack ex rel. Winkleblack v. Muprhy ex rel. Murphy*, 2001 WL 996036, at *8 (Ala. August 31, 2001)

5

(discussing requirement that party must establish his performance as an essential element to a breach of contract claim). REG mbH answers this question in the affirmative, and offers two alternative theories in support. The first avers a failure of the evidence to establish receipt on the part of Oxy Tire of any non-conforming tires. (Doc. # 49). The second argument observes that, the receipt of non-conforming tires notwithstanding, Oxy Tire expected to receive as part of the contract a percentage of non-conforming tires, and Oxy Tire cannot prove that any non-conforming tires received were not within this anticipated lot. (*Id.*).

As stated *supra*, the contract between the parties contemplated the sale and purchase of tires of a type specified by agreement. (*See* Doc. # 22, Ex. A). By their very nature, these tires possessed certain defects; in the sense that they were not new tires, but either downgraded or regraded tires. (*See* Doc. # 39, Dep. of Terry Habshey, pp. 37-39). Under the agreement(s)[4] of the parties though, *these* defects were not fatal to the contract. They were part of the contract. (*See* Doc. # 22, Ex. A). These same terms also provided the means by which the parties could measure conformity; delineating requirements as to such traits as roadworthiness. (*See id.*). And as a supplement to these terms, the parties understood that a certain percentage (approximately 1-4 percent) of the tires shipped would not conform to the contract. (*See* Doc. # 38, Dep. of Eric Habshey, p. 76; Doc. # 39, Dep. of Terry Habshey, pp. 106-07; Doc. # 40, Dep. of Ben Habshey, pp. 67-68).

---

[4] While there is but one contract at issue in this action, there evidently are numerous oral modifications, or "gentlemen's agreements," complementing its language and scope. *See, e.g., supra* note 2.

6

The evidence, fairly read and with reasonable inferences to the non-moving party, leads this court to conclude that a genuine issue of material fact exists as to whether plaintiff's tire shipments conformed to the terms of the contract and to the understanding of the parties. For example, Oxy Tire's President Terry Habshey testified at deposition that during the parties' course of dealing, an estimated 20-25 percent of the all the tires shipped from REG mbH to Oxy Tire failed to conform to the contract. (*See* Doc. # 39, Dep. of Terry Habshey, pp. 114-15). Like evidence is found in the testimony of Oxy Tire's sales manager Ben Habshey, who stated that large portions of and even entire shipments sent by Oxy Tire to its customers were rejected as defective. (*See* Doc. # 40, Dep. of Ben Habshey, pp. 80-81, 91-95, 127-28).

The plaintiff maintains (and cites testimony to this effect) that Oxy Tire "cannot produce any evidence whatsoever that would establish that scrap tires were included in any shipment by REG mbH." (Doc. # 49). Upon review of the parties' submissions, however, the court can not reach the same conclusion. Oxy Tire points to numerous instances where its customers – presumably of credible business acumen – suddenly ceased paying for tires originating from REG mbH. (*See* Doc. # 39, Dep. of Terry Habshey, pp. 48-51; 110-13; Doc. # 40, Dep. of Ben Habshey, pp. 70-73; 79-92; 127-28). Oxy Tire officials also present as exhibits to their respective depositions photographic evidence of allegedly defective tires purchased from REG mbH. (*See* Doc. # 40, Dep. of Ben Habshey, pp. 76-77; 80-89; 100-04; 122-33. The contents of many of the photographs, according to defendant, are actually representative of a larger number. (*Id*. at 90-91).

The charge of the court here is not to weigh evidence or assess credibility. The court must simply determine whether there is a genuine issue for trial. In light of the parties' submissions, the court cannot say that plaintiff's performance under the contract is not a genuine issue for trial. *See HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.*, 2001 WL 410470, at *4 (Ala. April 20, 2001). Summary judgment as to the breach of contract claim is, therefore, **DENIED**.

### B. Account Stated

Summary judgment is proper on the account stated claim only if REG mbH has established sufficient undisputed facts on the following three elements: "(1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability." *Miller v. Chapman*, 674 So. 2d 71, 74 (Ala. 1995); *see also Pileri Indus., Inc. v. Consolidated Indus., Inc.*, 740 So. 2d 1108, 1113 (Ala. Civ. App. 1999) (Crawley, J., dissenting). The court is satisfied that the second and third elements are sufficiently in dispute such as to establish a genuine issue for trial. The plaintiff has come forth with some evidence tending to support an acknowledgment by the defendant of a debt. See Doc. # 22, Ex. E, F). However, the president of Oxy Tire specifically contested indebtedness and liability in his deposition. (*See* Doc. # 39, Dep. of Terry Habshey, pp. 62). Summary judgment as to the account stated claim is, therefore, **DENIED**.

8

### C. Open Account

The claim of open account is an old and established cause of action in the State of Alabama. *See Maury's Adm'r v. Mason's Adm'r*, 8 Port. 211, 230 (Ala. 1838); *Sheppard v. Wilkins*, 1 Ala. 62 (1840). Its application, however, extends only to a prescribed set of circumstances. Those circumstances do not exist here.

"[A]n open account . . . [is] one in which some term of the contract is left open, undetermined by the parties; or when there are current running dealings, and the account, because of contemplated future dealings, is kept open." *Battle v. Reid*, 68 Ala. 149, 153 (1880); *see also Rose Manor Health Care, Inc. v. Barnhardt Mfg. Co.*, 608 So. 2d 358, 360 (Ala. 1992); *Sheppard*, 1 Ala. at 64-65; *Home Indem. Co. v. Ball-Co Contractors, Inc.*, 645 F. Supp. 25, 28 (S.D. Ala. 1986).

> A demand cannot be regarded as an open account where there is a contract certain and fixed in all its terms, which is the foundation of the claim. In this case the demand was based on a contract of shipment, and the amount payable as freight was a definite, certain, fixed sum – fixed by law. The qualifications which the law imposed determined the respective liabilities of the parties, and, the demand being ascertained and fixed by law, it is not an open account against which the statute of limitation of three years will run as a bar. An account is not necessarily an open one because it has not been stated or reduced to writing, if its terms are fixed and certain. An open account is one in which some term of the contract is not settled, and remains open for adjustment, whether the account consists of one item or many.

*Northern Ala. Ry. Co. v. Wilson Mercantile Co.*, 9 Ala. Ct. App. 269, 273-74 (1913). A term is not unsettled, moreover, even if it forms the basis for an output contract. *See Union Naval Stores Co. v. Patterson*, 179 Ala. 525, 530-31 (1912); *cf. Touart v. Yellow Pine Lumber Co.*, 128 Ala. 61, 66 (1900).

9

The language of the contract and the submissions of the parties compels the conclusion that the contract here does not constitute an open account. The terms of the agreement are alone of sufficient definiteness to warrant this conclusion. (*See* Doc. # 22, Ex. A). The parties, the price schedule, the payment schedule, the goods purchased, the quantity purchased, and so forth, are all thoroughly established by the contract. Moreover, both the contract and the plaintiff have demonstrated that this is not an instance of an open account based upon contemplation of future dealings between the parties. *See, e.g., Ex parte GTE Automatic Electric, Inc.*, 448 So. 2d 385, 387 (Ala. Civ. App. 1984); *Loventhal v. Morris*, 103 Ala. 332, 335 (1893); (*see also* Doc. # 22, Ex. A; B; D). Summary judgment as to the open account claim is **DENIED**.

### D. Goods Sold and Delivered

Plaintiff's final claim is also one with an apparently rich legal pedigree. *See, e.g., Richardson v. Humphreys*, Minor 383, 383 (Ala. 1824); *McMillion v. Pigg & Marr*, 3 Stew. 165, 170 (Ala. 1830). However, as was the case with plaintiff's breach of contract claim (*see* section IV.A, *supra*), the dispute of fact as to the quality of goods supplied by plaintiff likewise renders summary judgment inappropriate. *See Jackson Bolt & Screw v. Bolt & Screw*, 623 So. 2d 1127, 1128 (Ala. 1993); *see also Curb v. Stewart, Adams & Co.*, 210 Ala. 341, 343 (1923); *Pigg & Marr*, 3 Stew. at 170 ("[W]here goods are sold as of a certain quality, the defendant may, in an action for goods, sold and delivered, give the facts in evidence to reduce the damages; for the plaintiff is entitled to recover no more than the real value of his goods."). Summary judgment as to the goods sold and delivered claim is, therefore, **DENIED**.

E.   **Plaintiff's Motion to Reconsider**

REG mbH contends that Oxy Tire's breach of contract claim cannot proceed because the record fails to establish any effort on the part of Oxy Tire to give REG mbH reasonable notice of the defects in the tires consistent with the relevant provisions of the Uniform Commercial Code of Alabama. (Doc. # 55, pp. 3-4; *see also* Ala. Code §§ 7-1-201(26); 7-2-607(3)). The record does not bear this proposition out, however, and the relevant law of Alabama makes clear that Oxy Tire's efforts to notify REG mbH of the defects in the tires raise a sufficient issue of material fact so as to preclude summary adjudication of the issue now. *See, e.g., Southern Energy Homes, Inc. v. Washington*, 774 So. 2d 505, 511 (Ala. 2000); *Jewell v. Seaboard Indus.*, 667 So. 2d 653, 660 (Ala. 1995); *see also* Doc. # 38, Dep. of Eric Habshey, pp. 75-78, 82-84.

REG mbH responds that it is still entitled to summary judgment on Oxy Tire's breach of contract claim because in the original contract Oxy Tire agreed to release REG mbH from any alleged or potential liability arising in either tort or contract, in connection with tires purchased under the contract. (Doc. #55, p. 6). As is the case with most issues of contractual interpretation, when this court considers the language and scope of a release it is required to discern the intent of the parties as embodied by the agreement. *See Alabama Power Co. v. Blount Bros. Corp.*, 445 So. 2d 250, 252 (Ala. 1983); *see also Ex parte Hampton*, 706 So. 2d 1199, 1201 (Ala. 1997) (Kennedy, J., dissenting); *St. Louis & San Francisco R.R. Co. v. Cavender*, 170 Ala. 601, 610 (1910).

The relevant provision of the contract provides as follows:

> All Class "B" and "C" tires are sold as is, notwithstanding any use of the phrase "road worthy" or any other descriptive phrase. In addition, REG mbH shall have no liability for any defect in, or breach of any obligation related to, the quality of any tire sold hereunder regardless of the theory that may be asserted, including, without limitation, negligence, absolute liability in tort, contract or misrepresentation.

(Doc. # 22, Ex. A, ¶9(a)).[5] The language of this provision is quite clear insofar as it affects potential liability arising as a result of either defects in the quality of the tires or breaches of obligations related to the quality of the tires. Simply put, the language releases REG mbH from any liability incurred as a result of the aforementioned occurrences. When faced with similarly expansive releases, the Supreme Court of Alabama has observed that the parties to an agreement bear the responsibility of limiting the scope of an agreed-to release. "If the parties had wanted to limit the release, they could have expressly reserved and excepted certain claims . . . from the release." *Regional Health Servs., Inc. v. Hale County Hosp. Bd.*, 556 So. 2d 109, 114 (Ala. 1990); *see also Nix v. Henry C. Beck Co.*, 572 So. 2d 1214, 1216-17 (Ala. 1990). In light of the express agreement between the parties, the court finds judgment in favor of REG mbH to be warranted as a matter of law on the breach of contract counterclaim. In this regard, plaintiff's Motion to Reconsider is **GRANTED**.

F.   **Plaintiff's Motion to Dismiss**

REG mbH also moves to dismiss Oxy Tire's amended fraud and suppression claims. The plaintiff first asserts that Oxy Tire's claims (once again) fail to conform with the

---

[5] The plaintiff also directs the court's attention to paragraph 10 of the agreement, by which Oxy Tire apparently agreed to indemnify REG mbH and hold the corporation harmless against any liability relating to the sale of the tires. (Doc. # 22, Ex. A, ¶10). While the language of this term is somewhat redundant to that in paragraph 9 of the agreement, the court notes that the issues of contractual release and indemnity are separate legal issues. As resolution of the former controls the need to discuss the latter, however, the court will limit its discussion to paragraph 9 of the agreement.

12

pleading requirements of Federal Rule of Civil Procedure 9(b). It argues in the alternative, however, that the claims are barred pursuant to the contractual released agreed to by the parties. (Doc. # 57; *see supra* IV.E). As REG mbH itself admits, the second argument runs afoul of settled Alabama law refusing to enforce contractual releases from willful and wanton conduct . *See Reece v. Finch*, 562 So. 2d 195, 199-200 (Ala. 1990); *Barnes v. Birmingham Int'l Raceway, Inc.*, 551 So. 2d 929, 931-33 (Ala. 1989); *see also American General Life & Accident Ins. Co. v. Smith*, 4 F. Supp. 2d 1342, 1347 (M.D. Ala. 1998). Thus, whether or not Oxy Tire's claims are due to be dismissed depends on whether or not they comport with the pleading requirements of Rule 9(b).

Having reviewed the fraud and suppression counterclaims, the court agrees with REG mbH that the claims fall "woefully" short of the pleading requirements of Rule 9(b). Oxy Tire's amended counterclaims are essentially reproductions of its original counterclaims, with no added particularity whatsoever. Moreover, and perhaps not surprisingly, the reproductions possess less content and clarity than the originals. Needless to say, the amended claims do not include any precise statements of fraud or suppression, the timing of such statements, or description of individuals allegedly responsible. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *see also Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). The court has given the defendant an opportunity to amend its claims. This second bite at the apple, however, does not seem to have helped. The court thus finds that Oxy Tire's claims of fraud and suppression are due to be dismissed with prejudice. *See Ziemba*, 256 F.3d at 1213. Plaintiff's Motion to Dismiss these claims is **GRANTED**.

13

## V. Conclusion.

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __19th__ of October, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE